UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FABIOLA DERISME, | : | |
|     PLAINTIFF, | : | |
| | : | CIVIL ACTION NO. 3:10cv244(VLB) |
| | : | |
| v. | : | JULY 23, 2012 |
| | : | |
| HUNT LEIBERT JACOBSON P.C., | : | |
| RICHARD M. LEIBERT, | : | |
| RICHARD C. JACOBSON, | : | |
| KIMBALL HAINES HUNT, | : | |
|     DEFENDANTS. | : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' [DKT. #233] MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S [DKT. #244] CROSS MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, Fabiola Is Ra El Bey,[1] proceeding *pro se*, brought this suit alleging violations of the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110b(a) and – 110g(a), against Defendant Hunt Leibert Jacobson, PC, a Connecticut-based law firm and three individual Defendants who are partners of Hunt Leibert Jacobson, PC (collectively referred to herein as "Hunt Leibert") in connection with a pending foreclosure action in Connecticut Superior Court.  Pending before the Court is Hunt Leibert's motion for summary judgment and Plaintiff's cross motion for summary judgment.  For the reasons

---

[1] Plaintiff filed this action in her given name; however, she changed her name to Fabiola Is Ra El Bey upon her conversion to Islam prior to filing this action. At the Plaintiff's request, the Court refers to her as Fabiola Is Ra El Bey in recognition of her faith and religion.  *See Derisme v. Hunt Leibert Jacobson*, PC, 3:10-cv-244, 2010 WL 3417857, at *1 n.1-2 (D. Conn. Aug. 26, 2010).

set forth below, Defendants' motion for summary judgment is granted and Plaintiff's cross-motion is denied.

**Procedural Background**

This case has an extensive procedural background, a summary of which will enhance the understanding of this decision.  This is the first of two substantially similar civil actions that the *pro se* Plaintiff has filed in this Court against Defendant law firm Hunt Leibert in connection with two pending state foreclosure actions.  *See Derisme v. Hunt Leibert Jacobson, PC*, No. 3:10-cv-23(VLB) (D. Conn. Filed Jan. 7, 2010).

On February 19, 2010, the Plaintiff filed the instant lawsuit alleging violations of the FDCPA and the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §19641 *et seq.*  On March 26, 2010, Hunt Leibert filed its first motion to dismiss.  The then-assigned District Judge, the Honorable Mark R. Kravitz, noting that Plaintiff's complaint "was not a model of clarity" held a status conference regarding the first motion to dismiss on May 27, 2010.  After the conference, Judge Kravitz issued an Order denying the first motion to dismiss. Based on Plaintiff's representations during the conference, the court concluded that Plaintiff's only claims were an FDCPA claim and a RICO claim.  *See* [Dkt. #25].  During the conference, Judge Kravitz directed Plaintiff to file a RICO Case Statement as required by the United States District Court for the District of Connecticut's Standing Order in Civil RICO Cases no later than June 28, 2010. Plaintiff complied with the Court's Order by filing her RICO Case Statement on

June 28, 2010.  *See* [Dkt. # 33].  The Court also informed Hunt Leibert that it could file a motion to dismiss the RICO claim no later than July 15, 2010.

On June 8, 2010, Hunt Leibert filed its second motion to dismiss and a motion for a protective order to stay discovery on the ground that the court lacked subject matter jurisdiction over the action.  See [Dkts. ## 30,31].  Hunt Leibert then filed an amended second motion to dismiss to correct several typographical errors on July 1, 2010.  [Dkt. # 35].  Although Judge Kravitz specifically informed Hunt Leibert during the May 27, 2010 conference that it could file a motion to dismiss the RICO claim for failure to state a claim, Hunt Leibert's Amended Second Motion to Dismiss was styled as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  Hunt Leibert argued in support of the motion that this Court lacks federal question jurisdiction because the First Amended Complaint fails to state any federal-law claim for relief.  *See* [Dkt.# 30].  Plaintiff had numerous opportunities to respond to both arguments and had filed several voluminous memoranda addressing both arguments. *See* [Dkt.# 47].  Judge Kravitz therefore construed the amended second motion to dismiss as a consolidated motion asserting both lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6).

On July 6, 2010, Plaintiff filed a motion to amend the complaint and attached a proposed second amended complaint, [Dkt. #37], in which Plaintiff asserted that the court had subject matter jurisdiction under the federal question jurisdiction statute, *see* 28 U.S.C. §1331, and under the diversity jurisdiction

statute.  *See id.* § 1332.  She also asserted that the District Court has subject matter jurisdiction under 28 U.S.C. §1337, which provides federal district courts with jurisdiction over civil actions "arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." The second amended complaint still asserted an FDCPA claim and a RICO claim, and added a CUTPA claim.  The second amended complaint also asserted that the District Court had supplemental jurisdiction over related state-law claims, *see* 18 U.S.C. §1367.

On July 14, 2010, Hunt Leibert filed a third motion to dismiss, despite the fact that the Court had not yet ruled on the second motion to dismiss and Plaintiff's motion to amend.  On July 15, 2010, the Court denied the third motion to dismiss without waiting for a response from Plaintiff.  Judge Kravitz instructed Hunt Leibert that it should file a motion to supplement its briefing on the second motion to dismiss if it wished to make any new legal arguments.  *See* [Dkt. # 41]. The Court also instructed Hunt Leibert to direct any future briefing toward Plaintiff's second amended complaint rather than toward the first amended complaint. *See id.* On July 27, 2010, Hunt Leibert filed a motion to supplement the amended second motion to dismiss [Dkt.# 43] along with a supplemental memorandum in support of the amended second motion to dismiss. [Dkt.# 44].

On August 26, 2010, Judge Kravitz denied the second motion to dismiss as moot, denied the motion for protective order concluding that it had subject matter jurisdiction over the case, granted in part and denied in part Hunt Leibert's amended second motion to dismiss, granted in part and denied in part Plaintiff's

motion to amend the complaint, and granted Hunt Leibert's motion to supplement the amended second motion to dismiss.  *See* [Dkt.# 51], *see also Derisme v. Hunt Leibert Jcobson, PC*, 2010 WL 3417857 (D. Conn. Aug. 26, 2010).  Judge Kravitz held that Plaintiff's RICO claims against both Hunt Leibert and the individual Defendants failed as a matter of law and did not permit Plaintiff to further amend her RICO allegations because any such amendment would be futile.  *Id.* at *8.  The Court further allowed Plaintiff's second amended complaint to the extent that it asserted claims under the FDCPA and CUTPA.  Lastly, Judge Kraviz held that it had federal question jurisdiction in this case and that Plaintiff's other assertions regarding subject matter jurisdiction had no merit.  *Id.* at *7.  Although still not a model of clarity, Judge Kravitz construed Plaintiff's second amended complaint, ruling that the Plaintiff alleged that Hunt Leibert violated §§1692g(a),(b) and (e) of the FDCPA and also violated CUTPA.  [Dkt. # 37].

On October 4, 2010, Hunt Leibert filed a motion for judgment on the pleadings and argued that Plaintiff could prove no set of acts in support of her remaining claims in her second amended complaint.  See [Dkt.#64].  On November 10, 2010, Judge Kravitz granted in part and denied in part Hunt Leibert's motion for judgment on the pleadings.  *See Derisme*, 2010 WL 4683916 (D. Conn. Nov. 10, 2010).  Judge Kravitz held that the second amended complaint did not include sufficient factual allegations to reasonably infer that Hunt Leibert violated §§1692g(b) and (e) and therefore dismissed Plaintiff's FDCPA  claim to the extent it was based on violations of §§1692g(b) and (e).  *Id.* at *6-7.  The Court held that the second amended complaint, construed liberally, included sufficient

factual material to allow a court to draw a reasonable inference that Hunt Leibert failed to comply with the FDCPA's notice requirements during its initial telephone communication with Plaintiff under §1692g(a). *Id.* at *6. Judge Kravitz ruled that Plaintiff "may only continue to pursue her FDCPA claim to the extent that she alleges that Hunt Leibert violated §1692g(a) in its initial telephone communication with her in 2008. She may only continue to pursue her CUTPA claim to the extent that she asserts that by violating §1692g(a) in 2008, Hunt Leibert also violated §42-110b(a)." *Id.* at *9. Judge Kravitz also noted in its decision that the FDCPA claims are governed by a one-year statute of limitations but since Hunt Leibert did not raise a statute of limitations argument and that it was "at least conceivable that the statute of limitations might be equitably tolled" he did not need to address the statute of limitations issue at that time. *Id.* at *6 n.3.

On April 13, 2011, the Plaintiff once again moved to amend her complaint seeking to add several new causes of action including intentional and negligent infliction of emotional distress, fraudulent concealment and misrepresentation. *See* [Dkt.# 140]. On April 14, 2011 the case was transferred to this Court. On June 27, 2011, the Court denied Plaintiff's motion to amend the complaint finding that since the "Plaintiff has already amended the complaint twice, the Court has already ruled on a motion to dismiss and a motion for judgment on the pleadings, another amendment which adds entirely new causes of action at this late stage in the litigation would create prejudice to the opposing party as discovery is significantly complete and such new causes of action will require significant resources to conduct additional discovery and create additional delay in the

resolution of the dispute." *See* [Dkt.# 178].  The Court also held that such amendment would be futile.  [*Id.*].

On July 21, 2011, the Court held a status conference to discuss outstanding discovery issues with the parties.  During the colloquy at the conference, the Court gained a better understanding of the Plaintiff's theory of her case, reversed its decision and ruled that the Plaintiff could amend her complaint for the limited purpose of asserting two additional FDCPA claims in the interest of judicial efficiency and in deference to the Plaintiff's *pro se* status. Specifically, the Court ruled that the Plaintiff could amend her complaint to assert (1) "that in 2009 Plaintiff sent a written request for validation of debt after initial communication to foreclose on debt and that Defendant did not forbear on the foreclosure proceeding prior to sending validation to Plaintiff as evidenced by proof of short calendar claim" and (2) "that Defendant sought in 2010 to collect debt without disclosure of intent to do so by letter asserting that the FDCPA did not apply."  *See* [Dkt.# 197].

On July 29, 2011, the Plaintiff filed her third amended complaint in contravention of the Court's order.  *See* [Dkt.  # 201].  On August 4, 2011, Hunt Leibert filed a motion to strike the amended complaint in its entirety arguing that Plaintiff had added totally new allegations beyond the two additional claims permitted by the Court.  *See* [Dkt.# 206].  On August 24, 2011, the Court granted in part and denied in part Hunt Leibert's motion to strike.  *See* [Dkt.# 216].  The Court struck the additional allegations Plaintiff made regarding a loan modification Plaintiff entered with the holder of the loan through its servicer EMC

as irrelevant, immaterial and impertinent to the remaining claims against Hunt Leibert.  The Court also noted that although Plaintiff was not required to do so she had alleged facts in her third amended complaint in an attempt to overcome Hunt Leibert's affirmative defense based on the statute of limitations and noted that Plaintiff may present such facts supporting her equitable tolling claim on summary judgment.  [*Id.*].

The Plaintiff's claims on summary judgment have been distilled to three federal claims and one ancillary state claim.  The first is whether Hunt Leibert violated 15 U.S.C. §1692g(a) in its initial 2008 telephone communication by failing to send Plaintiff a written notice informing her of her right to dispute the debt within five days thereof (the "2008 FDCPA claim").  The second is whether Hunt Leibert violated 15 U.S.C.  §1692g(b) in 2009 by continuing to prosecute the foreclosure proceeding after she disputed the debt and before it sent her a verification of the debt (the "2009 FDCPA claim").  The final FEDERAL claim is whether Hunt Leibert violated 15 U.S.C. §1692e(11) by sending the Plaintiff a letter in 2010, contesting her assertion that its pending foreclosure proceeding violated the FDCPA, without disclosing in its letter that it intended to collect a debt (the "2010 FDCPA claim").  In addition, Plaintiff's CUTPA claim has been limited to her assertion that by violating the FDCPA Hunt Leibert violated CUTPA.

<u>Facts</u>

The Plaintiff disputes every fact asserted on the basis of unsubstantiated and conclusory assertions of law and fact.   Plaintiff's assertions are not

supported  by the record and the Plaintiff has failed to file any documents  in opposition to the Defendants' motion for summary judgment and its supporting documents.  Moreover, the record evidence offered by the Defendants soundly refutes the Plaintiff's conclusory assertion that genuine issues of material fact exist.   The record of evidence demonstrates the following facts.

In 2004, Plaintiff purchased a condominium located at 1423 Quinnipiac Avenue Unit #809 in the City of New Haven, Connecticut.  [Dkt. #234, Def. Local Rule 56(a)1 Statement at ¶¶2-3].  On July 14, 2006, Plaintiff refinanced the property, executing a note (the "Note') in the amount of $120,000 made payable to First Bank and executed a mortgage of the property in the bank's favor on the same date. .  [*Id.* at ¶¶1-3].  There was a second mortgage on the property for approximately $30,000.  [*Id.* at ¶4].

On January 14, 2008, EMC Mortgage Corporation ("EMC"), as servicer for LaSalle Bank Association as Trustee for Certificate holders of Bear Sterns Asset backed Securities, LLC, Asset-Backed Certificates, Series 2006-HE9 (hereinafter "LaSalle"), sent a letter to Plaintiff informing her that they had forwarded her account to an "attorney/trustee to immediately initiate foreclosure proceedings" and that "should you wish to reinstate or pay off your loan, or if you have questions regarding the foreclosure process, please contact the attorney/trustee [Hunt Leibert] handling the foreclosure process."  [Dkt.# 244, Ex. A. EMC letter].

On January 22, 2008, Hunt Leibert on behalf of LaSalle served on Plaintiff a Connecticut Superior court complaint seeking foreclosure dated January 17, 2008

due to Plaintiff's default on the Note (the "2008 Foreclosure").  [Dkt. #234, Def. Local Rule 56(a)1 Statement at ¶7]; *see also* [Dkt. #234, Ex. E, Superior Court Summons and Complaint dated January 17, 2008].  On January 18, 2008, Hunt Leibert caused a Lis Pendens to be recorded on the land records of New Haven giving notice of the pending foreclosure.  [Dkt. #234, Def. Local Rule 56(a)1 Statement at ¶8].

On January 28, 2008, Plaintiff initiated a telephone call to Hunt Leibert to find out how to stop the foreclosure.  [*Id.* at ¶¶9-10].  On the same day, Plaintiff requested a payoff for the balance owed on the Note via Hunt Leibert's website. [*Id.* at ¶11].  On February 12, 2008, Plaintiff received a facsimile from Hunt Leibert with the amount needed to pay off the mortgage loan.  [*Id.* at ¶13]; *see also* [Dkt. #234 , Ex. I, Fax Transmittal and Confirmation Page].

In 2008, Plaintiff communicated directly with EMC and entered into a Loan Modification Agreement, effective June 27, 2008 with EMC.  [Dkt. #234, Def. Local Rule 56(a)1 Statement at ¶15]; *see also* [Dkt.# 234, Ex. J, Loan Modification Agreement].  Plaintiff believes that the Loan Modification should have been for an arrearage in the amount of approximately $13,667.67 but that EMC drafted the modification in a manner as to cause the loan modification to be "issued for approximately $120,000 over the arrearage, in the amount of $132,246.26."  [Dkt. #276 at ¶11].  Defendant has explained that the Loan Modification did not create a separate and additional debt.  [*Id.*].

On December 11, 2008, Hunt Leibert filed a withdrawal of the 2008 Foreclosure as a result of the execution of the Loan Modification Agreement. [Dkt. #234 at ¶19].  Following the withdrawal of the 2008 foreclosure proceeding, Hunt Leibert recorded a Release of *Lis Pendens* on the land records of New Haven.  [*Id.* at ¶20].

Plaintiff came to believe that EMC and LaSalle had engaged in fraud under the Truth in Lending Act ("TILA") and composed a number of documents purporting to cancel the mortgage agreement on that basis.  [Dkt. #276 at ¶12 and Dkt. #244, Ex. E].  Plaintiff asserts that the "original loan transaction that was never extinguished upon execution of the alleged loan medication was cancelled under TILA" on May 8, 2009, and that "Notice was placed on the New Haven Land Records before the second foreclosure action in July 2009."  [*Id.*].

On July 23, 2009, Hunt Leibert, on behalf of Bank of America, National Association, as successor by merger to LaSalle, filed in Connecticut Superior Court a complaint seeking foreclosure dated July 22, 2009, due to Plaintiff's default on the Note (the "2009 Foreclosure").  [Dkt.# 234 at ¶21]; *see also* [Dkt.# 234, Ex. M, Superior Court Summons and Complaint dated July 22, 2009].  Hunt Leibert also caused a Lis Pendens to be recorded on the land records.  [Dkt. # 234 at ¶21].

On July 24, 2009, Plaintiff filed a motion to dismiss the 2009 Foreclosure. [Dkt. #234, Ex. P, Superior Court Motion to Dismiss].  In that motion, Plaintiff purported to unilaterally void the note and mortgage *ab initio.*  She wrote that she

"sent Notices of Rights to Cancel, Revocation of Power of Attorney and Removal of Trustee, Beneficiaries and assigns to EMC Mortgage and First Bank Mortgage. Signatures were also rescinded from all documents.  Subsequent to that they were sent notices of default for not responding according to the rules set forth in TILA guidelines.  EMC Mortgage forwarded me a document entitled Notice of Rights to Cancel.  This document is forged.  No rights to cancel were ever signed given or told.  An affidavit was sent stating the fraud … This Lis Pendens is cancelled, rejected, voided ab inito, nunc pro tunc.  I do not have any contract with you.  I do not want to get back into a contract with you.  I do not want to enter into any contracts with you.  Your offer is refused for failure to state a claim, upon which relief can be granted.  You have no Standing to bring this claim… I am invoking my right to cancel CONTRACTS under commercial law within three days." [*Id.*] (emphasis in the original).

In response to Plaintiff's assertions, Hunt Leibert sent the Plaintiff a letter dated on August 5, 2009 entitled "Debt Validation Letter" which stated the outstanding loan balance was $139,529.28 .  [Dkt. #234 at ¶24]; *see also* [Dkt. #234, Ex. Q].  Included with the letter was a computer generated print-out which gave a detailed breakdown of the balance owed.  [*Id.*].

On August 12, 2009, Hunt Leibert filed an objection to the motion to dismiss.  [Dkt. #234 at¶25]; *see also* [Dkt. #234, Ex. R].  In its objection, Hunt Leibert noted that Plaintiff "has pleaded the instant motion to dismiss alleging lack of standing based upon concepts of truth in lending act and a substantive claim of rescission of the underlying loan instruments."  [Dkt. #234, Ex. R].  Hunt

Leibert, on behalf of its client, stated in its objection that Plaintiff Is Ra El Bey "executed a Note and Mortgage Deed, that it is the holder of the loan instruments, that the instruments are in default, and that it has elected to exercise the remedy of foreclosure in accordance with the underlying mortgage deed." [*Id.*].   Lastly, Hunt Leibert stated that it had pleaded all the elements for a foreclosure action within the complaint.

On August 24, 2009, Plaintiff filed an "affidavit of facts" / "rebuttal to Debt Collector's objection to dismiss and amendment to motion to dismiss" dated August 24, 2009.  [Dkt. #234 Ex. S].  Plaintiff argued that she had revoked power of attorney on May 12, 2009 and that these "notices were posted in the public record but that the Debt Collectors chose to ignore them and bring this illegal action."  Plaintiff also argued that she was "well within the right to also cancel the alleged loan under TILA and sought relief for the injury" and therefore she "rejects the Debt Collector's assertion unequivocally that a Promissory Note was executed. THERE IS NOT PROMISSORY NOTE.  THERE WAS NEVER A PROMISSORY NOTE (sic)."  [*Id.*] (emphasis in the original).

On August 27, 2009, Plaintiff sent an "Initial Debt Collection Dispute Letter" via certified mail to Hunt Leibert.  *See* [Dkt.# 234, Ex.T].  In this letter, Plaintiff stated that "I DO NOT HAVE A CONTRACT with YOU and I DO NOT WISH TO CONTRACT with you.  If you believe you have a valid contract I am putting you on notice that it is NULL, VOID, RESCINDED, ANULLED, CANCELLED, AB INITIO and NUNC PRO TUNC.  Your attempt to contract with FABIOLA DERISME via Summons was rejected on July 24, 2009." [*Id.*] (emphasis in the original).

Plaintiff also indicated that Hunt Leibert was "engaging in deceptive and unfair Collection Processes" and "collecting on a cancelled debt."  Plaintiff further requested the "following proof with the Attorney General and the Secretary of State as my witnesses: (1) Produce the original wet ink signature promissory note for inspection front and back; (2) Produce the name and address of the current Holder; (3) Produce the name and address of the Original Lender; (4) Produce Customer Account Activity Statement or other accounting statement or report that details all transaction on this account from July 14, 2006 to the date of Cancellation May 12, 2009; (5) Produce the Original wet ink signature Loan Modification Document for inspection front and back; (6) Produce proof of valid Assignment and evidence of a UCC 3 financing statement; and (7) Produce proof that you are license to collect debt in Connecticut."  [*Id.*].   Lastly, Plaintiff indicated that "[u]ntil and unless you provide the above proof and all the necessary validation evidence as required under the FDCPA, I demand that you Cease and Desist all unlawful Collection activities immediately and that you withdraw your unlawful complaint." [*Id.*].

        On September 25, 2009, Hunt Leibert filed a reclaim of its objection to the motion to dismiss.  [Dkt.# 234, Ex. U].  On October 1, 2009 Hunt Leibert sent a letter to Plaintiff stating that it had marked "ready for argument" the objection to the motion to dismiss for the Connecticut Superior Court's short calendar for October 5, 2009.  [Dkt.# 234, Ex. V].  The Superior Court held oral argument on the motion to dismiss and objection to the motion on October 5, 2009.  [Dkt. # 234 at ¶30].

On December 15, 2009, Hunt sent the Plaintiff a second and more detailed validation letter entitled "Debt Validation Response Letter" which included information regarding the calculation of the debt owed, a full payment history, updated payoff figures, and copies of the Note and Mortgage.   [Dkt. # 234, Ex. Y].

On February 5, 2010, Plaintiff mailed three identical "Complaint Letters" to Richard Leibert, Richard Jacobson, and Kimball Hunt, three partners of Hunt Leibert, informing them "about the deceptive collection practices your firm has been engaging in." [Dkt. # 234, Ex. AA].  Plaintiff further indicated in the letters that "[y]our firm has not complied with the FDCPA requirements and although I have sent letters about the non-compliance, the illegal practices still continue." [*Id.*].  Plaintiff further stated that Hunt Leibert had "placed a lis pendens on my home although the alleged debt has been cancelled or was at least being disputed.  These notices were placed on the public records therefore the attorneys were aware of them.  However, these notices were acknowledged but ignored."  [*Id.*].  Plaintiff stated that Hunt Leibert "also failed to send an initial debt collection letter within the required five day period under the FDCPA.  This would mean that any other action they take would be threatening action that can't be taken.  I have sent letters pointing these things out, however, your firm refuses to cease and desist its collection efforts."  [*Id.*].  Lastly, Plaintiff indicated that she was giving each partner "three days to respond to my letter in writing so that you can inform me of how you will be rectifying this situation.  Failure to respond will mean that you condone these practices and this is just the culture of your company and the way it is supposed to run."  [*Id.*].

On February 12, 2010, Attorney Peter Ventre of Hunt Leibert sent Plaintiff a "Reply Letter" responding to her three "Complaint Letters." [Dkt. #234, Ex. BB]. In the letter, Attorney Ventre stated that Plaintiff's "unilateral recording of documents on the land records does not impact the ability of our firm to proceed on your breach of the terms of the note and mortgage." [*Id.*]. Attorney Ventre also indicated that "outside of pleadings, an initial debt letter was sent to you on August 5, 2009 concerning the above property. On August 27, 2009, you disputed the validity of the debt. Thereafter, on December 15, 2009, this office responded to your debt dispute by providing you with a letter validated the debt along with a copy of the note, mortgage, payment history and an updated pay-off amount." [*Id.*]. Attorney Ventre also indicated that the subject property was not Plaintiff's primary residence, but appears to be an investment property with rental income and "[t]herefore, this loan may not be subject to the FDCPA" and cited to a Fifth Circuit and Ninth circuit case. [*Id.*].

### Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.*, (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita*

16

*Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch-Rubin v. Sandals Corp.*, No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted).

<u>Analysis</u>

As a preliminary matter, Plaintiff's cross-motion for summary judgment entirely focuses on Plaintiff's argument that Hunt Leibert is not entitled to the affirmative defenses it asserted in its answer.  *See* [Dkt.# 244].  An affirmative defense is defined as "'[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'"  *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's law Dictionary 430 (7th ed. 1999)).  Therefore even if the Court were to consider and hold that Hunt Leibert is not entitled to any of the

affirmative defenses it pled in its answer, Plaintiff would still not be entitled to a grant of summary judgment in her favor.  The Court's analysis on summary judgment is primarily focused on the evidence submitted by the parties relating to the allegations a plaintiff makes in a complaint.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Here, the Court could only grant summary judgment in favor of Plaintiff if first Plaintiff demonstrated there was no genuine dispute as to any material fact relating to her allegations that Hunt Leibert violated the FDCPA and second that the undisputed facts demonstrated that Plaintiff is entitled to judgment as a matter of law.  In other words, do the undisputed facts as a matter of law demonstrate that Hunt Leibert violated the FDCPA.  Since an affirmative defense is by definition unrelated to a plaintiff's allegations, a finding by the Court that Hunt Leibert is not entitled to an affirmative defense would not also demonstrate that Hunt Leibert violated the FDCPA as a matter of law.  Accordingly, Plaintiff's argument that she is entitled to summary judgment because Hunt Leibert's affirmative defenses cannot defeat her claim is unavailing.

The Court notes that Hunt Leibert asserted several affirmative defenses for failure to state a claim.  However, "failure to state a claim" is better considered a general defense aimed at the sufficiency of the allegations in the complaint and is appropriately asserted on motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6).  *See Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (holding that a general denial of allegations is insufficient to plead an affirmative defense).  Here, Hunt Leibert has already moved to dismiss Plaintiff's complaint several times for failure to state a claim.  On summary judgment, the Court's analysis is focused on the sufficiency of the evidence and not the sufficiency of the pleadings.  *See e.g., Fox v. Poole*, No.06CV148, 2008 WL 3540619, at *5 (W.D.N.Y. Aug. 12, 2008) ("On a motion for summary judgment, however, the issue is not the sufficiency of the pleadings rather whether evidence has been introduced by the opponent to establish a material issue of fact for the claims alleged in the pleadings to defeat a summary judgment motion."); *Dicara v. Connecticut Educ. Dept.*, No.3:08cv627(PCD), 2008 WL 5083622, at *4 (D. Conn. Nov. 26, 2008) ("'Summary judgment is designed to pierce the pleadings' and evaluate the sufficiency of the evidence to support the claims therein.") (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)).  Accordingly, the Court will not entertain any arguments as to the sufficiency of Plaintiff's allegations in her third amended complaint on summary judgment from either party.

Hunt Leibert has primarily argued that it is entitled to summary judgment on the basis that (i) Plaintiff's claims are barred by the statute of limitations, (ii) that the FDCPA does not apply to its 2008 communication because the communication was initiated by the Plaintiff, and (iii) that the FDCPA does not apply to its 2010 communication because such communication was not an attempt to collect a debt.  Plaintiff argues that Hunt Leibert's arguments on

summary judgment are "prejudicial as some of the 'grounds' that they have stated are raised for the first time on Summary judgment and Plaintiffs were not on notice about some of these 'grounds,' as such any grounds raised for the first time on Summary Judgment is waived and/or forfeited."  [Dkt.# 253 at p.1-2].

Plaintiff appears to be under the misimpression that a defendant's answer must contain its legal arguments and that failure to include such arguments constitutes a waiver.  However under Rule 8(b)(1), in responding to a  pleading, a party must "(a) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party."  Fed. R. Civ. P. 8(b)(1).  Therefore, a defendant is only required to answer with a general denial and then may raise specific legal arguments on summary judgment.  Accordingly, Hunt Leibert is not precluded from raising such arguments on its motion for summary judgment.

i.    *Plaintiff's claim that Hunt Leibert violated the FDCPA in 2008 is barred by the statute of limitations*

Hunt Leibert argues that Plaintiff's claim that it violated Section 1692g(a) in its initial communication in 2008 is barred by the FDCPA's one-year statute of limitations.  *See* 15 U.S.C. § 1692k(d).  Plaintiff asserts that Hunt Leibert violated the FDCPA after her initial phone call on January 18, 2008 which resulted in a facsimile being sent from Hunt Leibert to her containing pay off amounts on February 12, 2008.  Plaintiff then filed suit almost two years later on February 19, 2010.

Plaintiff argues that she is entitled to equitable tolling of the statute of limitations, preserving her right to prosecute her 2008 FDCPA claim. "The doctrine of equitable tolling applies only in 'rare and exceptional circumstances' to allow a complainant to file a claim outside the applicable limitations period." *Boyd v. J.E. Robert Co.*, No.05-cv-2455(KAM)(RER), 2011 WL 477547, at \*7 (E.D.N.Y. Feb. 2, 2011) (quoting *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007)). "Generally, the doctrine applies only where, 'because of some action on the defendant's part, the complainant was unaware that the cause of action existed.'" *Id.* (quoting *Long v. Frank*, 22 F.3d 54, 58 (2d Cir. 1994)). "In the context of a claim of fraudulent concealment, plaintiffs must show: (1) concealment of the alleged wrongdoing; and (2) plaintiffs failure to discover the facts giving rise to their claims despite their exercise of due diligence." *Id.* (citations omitted). Concealment may be demonstrated "by showing either that the defendant took affirmative steps to prevent the plaintiffs' discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." *State of N.Y. v. Hendrickson Bros.*, Inc., 840 F.2d 1065, 1083 (2d Cir. 1988). "Even 'absent fraudulent concealment,' however, equitable tolling may apply in the presence of specific 'special circumstances' where 'a reasonable plaintiff in the circumstances would have been [un]aware of the existence of a cause of action.'" *Boyd*, 2011 WL 477547 at \*7 (quoting *Veltri Building Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004)). "Yet, while a plaintiff need not show fraudulent concealment in the presence of certain 'special circumstances,' such a plaintiff must still demonstrate due diligence in order to invoke the

21

equitable tolling doctrine." *Id.*   Courts have held that "[e]quitable tolling applies to FDCPA claims in appropriate circumstances."   *Coble v. Cohen & Slamowitz, LLP*, No.11cv1037VC, 2011 WL 5142577, at *3 (S.D.N.Y. Oct. 31, 2011). The Plaintiff has not established the prerequisites to the invocation of equitable tolling of the statute of limitations necessary to preserve her right to assert the 2008 FDCPA claim.

Plaintiff argues that she is entitled to equitable tolling because "defendants are in a very unique position as debt collectors who can start conducting a debt collection action without ever contacting a consumer outside of legal pleadings … Here defendants enjoy the benefit of starting legal procedure without ever having to send one dunning letter or to make a single phone call regarding a debt.  Therefore, they can [act] in stealth and conceal the action against them." [Dkt.# 253, Pl. Mem. at p. 4-5].   A foreclosure proceeding is not a secret, concealed or stealth undertaking.   On the contrary, the Connecticut Rules of Practice in Civil Matters require service of the writ, summons and complaint, containing a statement of the relief sought and the basis therefore, on the defendant.  Connecticut Rules of Court in Civil Maters §§8-1 and 10-1. Section 10.1 requires that each pleading, including a complaint "contain a plain and concise statement of the material facts on which the pleader relies."  In fact, the Plaintiff concedes that she had both notice of both the existence of and the basis of the foreclosure lawsuit filed by the Defendant. The Plaintiff's vociferous objection evinces her knowledge and understandinf of the writ, summons and complaint.  When Plaintiff was served the complaint, she was informed that the

holder of her mortgage was seeking foreclosure on the subject property as a result of her default on the Note.  Plaintiff offers no support for her contention that, Hunt Leibert was obligated to contact her before filing its complaint and summons in Superior Court under the FDCPA and the Court has found none.  The fact that it did not do so was not an affirmative or even inadvertent act of concealment which hampered the Plaintiff's discovery of a FDCPA claim.

Plaintiff also argues that EMC in its January 14, 2009 letter to Plaintiff engaged in an act of concealment when they sent her a letter telling her that they were turning over her account not to a debt collector but to an attorney/trustee to immediately initiate foreclosure proceedings.  [*Id.* at 5].  Plaintiff argues that when EMC used the words "foreclosure proceedings" instead of "debt collection" that made it "impossible for a least sophisticated consumer to realize that the 'foreclosure proceedings" is your debt collection action."  [*Id.*].  However since EMC is not a defendant in the instant action, its actions cannot be attributed to Hunt Leibert.  Therefore EMC's letter cannot be considered "some action on the defendant's part" that would justify the application of the doctrine of equitable tolling.  *Boyd*, 2011 WL 477547, at *7.  Even if EMC's conduct could be attributed to Hunt Leibert, neither EMC nor Hunt Leibert engaged in the concealment of the alleged wrongdoing as the foreclosure suit was not seeking to collect a debt but rather to foreclose on the mortgage.  Consequently, there was no act of concealment when EMC stated that it had turned over Plaintiff's account to its attorney Hunt Leibert to initiate foreclosure proceedings.  The plain and concise statement of the material facts supporting the mortgagee's right to foreclosure of

the property and the prayer for a judgment of foreclosure put the Plaintiff squarely on notice that the foreclosure was being prosecuted to enforce the mortgagee's right to both legal and equitable title to the property in substitution for the Plaintiff's repayment of her delinquent debt.

Plaintiff also argues that Hunt Leibert was "in the unique position…by being able to sue in the name of the banks took advantage of that position and participated in active concealment.  Every single act that the defendants did regarding the 2008 foreclosure action, they communicated that the action was done in the name of the bank.  Such active concealment brings about extraordinary circumstance."  [Dkt. #253, Pl. Mem. at p.9].  Hunt Leibert as the law firm representing the holder of Plaintiff's mortgage could not bring the foreclosure action directly in its name and therefore there was no act of concealment perpetrated.  The fact that an attorney brings a foreclosure action on behalf of its client does not constitute a rare and extraordinary circumstance warranting equitable tolling.  Moreover, the foreclosure pleadings were expressly signed by Hunt Leibert as attorney for the bank in whose name the action was filed therefore the Plaintiff could not have been confused as to the law firm's role.

All of Plaintiff's arguments appear to boil down to the fact that Plaintiff was unaware that Hunt Leibert, as a law firm filing a foreclosure action on behalf of its client, might be considered a debt collector under the FDCPA.  However, it is well established that "[e]quitable tolling is not warranted merely because the plaintiff was unaware of his cause of action."  *Henry v. Wyeth Pharmaceuticals, Inc.*, No.05Civ.8106(CM), 2007 WL 2230096, at *28 (S.D.N.Y. July 30, 2007); *Mark v. Park*

*Ave. Synagogue*, No.10Civ.7578(RJH), 2011 WL 3611322, at *3 (S.D.N.Y. Aug. 11, 2011) (equitable tolling not applicable where only reason for delay was that Plaintiff never know of his rights until he met someone who told him of such rights since "ignorance of the law does not constitute a rate and extraordinary circumstance that would merit equitable tolling") (internal quotation marks and citation omitted); *Fairley v. Collins*, No.09Civ.6894(PGG), 2011 WL 1002422, at *6 (S.D.N.Y. Mar. 15, 2011) (Plaintiff's "alleged ignorance about his ability to file a lawsuit against Defendants is likewise not sufficient to invoke equitable tolling."). The fact that the Plaintiff was unaware that she had a potential cause of action against Hunt Leibert is not the type of extraordinary circumstances that would warrant the application of equitable tolling.  There is simply no evidence that Hunt Leibert took any affirmative steps to prevent the Plaintiffs' discovery of her potential FDCPA claim against it when it filed the foreclosure action in Connecticut Superior Court on behalf of its client.

Plaintiff also attempts to demonstrate that she exercised due diligence to learn of the cause of action in 2008 by consulting three different attorneys regarding the foreclosure proceeding.  Plaintiff asserts that none of the attorneys "said anything about a possible cause of action against the defendants, therefore Plaintiff remained in ignorance of the cause of action through no fault of her own."  *See* [Dkt.# 253, Pl. Mem. at p. 8].  Here, Plaintiff admits that she consulted these attorneys about the foreclosure proceeding itself which is distinct from whether Plaintiff sought advice about whether she had an entirely distinct and separate claim against the law firm prosecuting the foreclosure action.  Since

Plaintiff has not provided any evidence that she made inquiries about Hunt Leibert's conduct in filing the foreclosure action as opposed to inquiries regarding how to defend against the foreclosure action itself, Plaintiff has not demonstrated that she exercised reasonable diligence to discover the potential cause of action against Hunt Leibert under the FDCPA.  Consequently, Plaintiff has not demonstrated that she exercised due diligence to discover her claims against Hunt Leibert.  In sum, Plaintiff has failed to demonstrate that equitable tolling should apply to her 2008 FDCPA claim against Hunt Leibert and therefore such claim is barred by the statute of limitations.

> ii.    *Plaintiff's claims that Hunt Leibert violated the FDCPA in 2009 and 2010 are not barred by the statute of limitations*

Hunt Leibert argues that Plaintiff's 2009 and 2010 FDCPA claims are barred by the one-year statute of limitations since Plaintiff filed her third amended complaint on July 29, 2011.  Hunt Leibert argues that Plaintiff's 2009 and 2010 claims are based on new facts and different transactions wholly unrelated to her prior allegations in the operative second amended complaint and therefore do not relate back to her prior allegations.

Under Federal Rule Civil Procedure 15(c) an amendment relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  "The purpose of 'Rule 15 'is to provide maximum opportunity for each claim to be decided on the merits rather than on procedural technicalities.'"  ***Slayton v. American Exp. Co.,***

460 F.3d 215, 228 (2d Cir. 2006) (quoting *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983)).   "Under Rule 15, the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.  Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs"  *Id.* (internal quotation marks and citation omitted).

Although not a model of clarity, Plaintiff's original complaint filed on February 19, 2010 contains allegations, which liberally construed, allege that Hunt Leibert's conduct in 2009 and 2010 violated the FDCPA.  In the original complaint, Plaintiff alleges that "instead of validating debt, the Defendants, caused litigation action to be placed on the short calendar in the state court of Connecticut" and "without sending any validation of debt, the Defendants mailed a reclaim letter for a court hearing" and lastly, "marched into court on October 5." *See* [Dkt. #1, Compl. at ¶¶34-36].   In addition, Plaintiff's original complaint alleges that she sent a letter to Hunt Leibert on February 5, 2010 complaining about their "unscrupulous behavior" and that a response was sent date February 12, 2010 not subjected to the FDCPA." [*Id.* at ¶¶40-45].  Consequently, Hunt Leibert had adequate notice of the matters raised in the third amended complaint based on Plaintiff's original complaint.  In deference to Plaintiff's *pro se* status, the Court finds that Plaintiff's claims relate back to her original complaint and therefore such claims fall within the FDCPA's one-year statute of limitations.  Such an outcome further advances Rule 15's preference for claims to be decided on the

merits and comports with the Court's obligation to construe liberally the submissions of a *pro se* litigant.   Accordingly, Plaintiff's claims that Hunt Leibert violated the FDCPA in 2009 and 2010 are not barred by the statute of limitations.

> ### iii.   *Sections 1692g and 1692e of the FDCPA are not applicable to Hunt Leibert since Hunt Leibert was enforcing a security interest and not collecting a debt*

Plaintiff has asserted that Hunt Leibert violated Section 1692g(a) in its initial communication in 2008, violated Section 1692g(b) by not forbearing on the foreclosure proceedings in 2009 and violated Section 1692e(11) by attempting to collect a debt without disclosure of intent to do so.  The entire basis of Plaintiff's FDCPA claims is premised on the assumption that Hunt Leibert was collecting a debt when it filed the foreclosure action in Superior Court and thereby Hunt Leibert was subject to Sections 1692g and 1692e of the FDCPA.   Under Connecticut mortgage foreclosure law, a foreclosure action is not a legal action to enforce a debt but rather an equitable action to enforce a security interest rather than a debt collection.  As will be explained further below, an enforcer of a security interest falls outside of the scope of the FDCPA except for the provisions of Section 1692f(6) and therefore an enforcer of a security interest would not be subject to the provisions in Sections 1692g and 1692e of the FDCPA.

> ### a. *Hunt Leibert was enforcing a security interest by foreclosing the Plaintiff's right to redeem the mortgaged property and not collecting a debt*

"Connecticut follows the title theory of mortgages which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property.... In a title theory state such as

Connecticut, a mortgage is a vested fee simple interest subject to complete defeasance by the timely payment of the mortgage debt." *Mortgage Electronic Registration Sys., Inc. v. White*, 278 Conn. 219, 231 (2006).   The Connecticut Supreme Court has explained that the

> title theory of mortgages is a series of legal fictions [that serves] as a convenient means of defining the various estates to which conveyances may give rise.... Despite our title theory of mortgages, [i]n substance and effect ... and except for a very limited purpose, the mortgage is regarded as mere security ... and the mortgagor is for most purposes regarded as the sole owner of the land.... The mortgagee has title and ownership enough to make his security available, but for substantially all other purposes he is not regarded as owner, but the mortgagor is so regarded, always subject of course to the mortgage.

*Town of Groton v. Mardie Lane Homes, LLC*, 286 Conn. 280, 290 (2009) (internal quotation marks and citations omitted).   "The equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage ... Generally, foreclosure means to cut off the equity of redemption." *Ocwen Federal Bank, FSB v. Charles*, 95 Conn.App. 315, 322-34 (2006) (internal quotation marks and citations omitted).

Under Connecticut law, an action to collect a debt would be an action at law rather than in equity.   It is well established that "ordinarily [a] money judgment is obtained by an action at law.... [A]n action is to be deemed legal in nature, rather than equitable, where the only relief sought is the collection of money damages." *Gagne v. Vacarro*, 80 Conn.App. 436, 442 (2003), cert. denied, 268 Conn. 920 (2004).   On the other hand it has long been recognized that a "foreclosure action, however, is an equitable proceeding." *City of New Haven v.*

*God's Corner Church, Inc.*, 108 Conn.App. 234. 239 (2008).   "Generally, foreclosure means to cut off the equity of redemption, the equitable owner's right to redeem the property.... ." *White*, 278 Conn. at 229-30 (internal quotation marks and citation omitted).   A judgment of strict foreclosure, when it becomes absolute and all rights of redemption are cut off, constitutes an appropriation of the mortgaged property to satisfy the mortgage debt. *National City Mortg. Co. v. Stoecker*, 92 Conn. App. 787, 793 (2006).

The Connecticut Supreme Court has noted that that "[a]t common law, a mortgagee was required to elect between a foreclosure action or an action on the underlying debt.... Thus, even if the value of the property that the mortgagee gained was less than the debt owed to her, the entry of judgment precluded any further common-law proceedings on the note.... Consequently, in 1833, the legislature created the remedy of the deficiency judgment in order to make the plaintiff whole when the value of the security did not cover the amount of the debt owed to the plaintiff." *Linden Condominium Assn., Inc. v. McKenna*, 247 Conn. 575, 587 (1999) (internal quotation marks and citations omitted).   Connecticut courts have concluded however that the fact "that a separate proceeding may result in a personal judgment against the debtor for the amount of the debt unsatisfied by the foreclosed property does not convert that portion of the equitable foreclosure proceedings into an action at law.   With these legal principles in mind, we conclude that a judgment of foreclosure does not call in whole or in part for the payment of a sum of money but, rather, it calls for the

vesting and divesting of title to real property." *City of New Haven*, 108 Conn.App. at 140. (citations omitted).

Therefore under Connecticut law a mortgage is considered a "mere security" in which a mortgagee holds "title and ownership enough to make his security available." *Town of Groton*, 286 Conn. at 290.    Further, a foreclosure proceeding seeks to cut off the equity of redemption and a judgment of foreclosure results in the vesting and divesting of title to property in discharge of a duty to, as opposed to, the payment of a sum of money. *City of New Haven*, 108 Conn.App. at 140. (citations omitted).   Consequently, when Hunt Leibert filed the foreclosure action in Superior Court, Hunt Leibert was not seeking a money judgment on behalf of its client but was instead seeking to enforce the security interest of its client.

The Court notes that Hunt Leibert's foreclosure complaint also contained a claim for a deficiency judgment.   Under the Connecticut foreclosure statutory regime, "[t]he foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure...." Conn. Gen. Stat. §49-1.  However, Conn. Gen. Stat. §49-14 furnishes an exception to §49-1 by providing that, "[a]t any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment."  Conn. Gen. Stat. §49-14.  Therefore under §49-14, the mortgagee has to seek a deficiency judgment upon written motion made within thirty days after the time limited for redemption has expired.   Since a

deficiency judgment seeks money damages it is tantamount to an action seeking to collect a debt.  *See Eichman v. J. & J. Bldg. Co., Inc.*, 216 Conn. 443, 453 (1990) ("Indeed, deficiency judgment hearings more closely resemble suits for collection than condemnation hearings.").

The failure to timely move for a deficiency judgment is a bar to any subsequent action to collect the debt previously secured by the mortgage. Although deficiency proceedings are a part of the main foreclosure suit they are separately brought by written motion and if not timely made will be lost. *See e.g., Maresca v. DeMatteo*, 6 Conn.App. 691, 696 (1986) ("[T]he deficiency judgment procedure, although procedurally a part of the foreclosure action, serves the separate function of providing for recovery on the balance of the note which was not satisfied by the strict foreclosure"),*overruled on other grounds by Ferrigno v. Cromwell Dev. Assocs.*, 44 Conn.App. 439 (1997); *F.D.I.C. v. Hillcrest Assocs.*, 233 Conn. 153, 172-73 (1995) (concluding that although the thirty-day time limitation under §49-14 was not subject matter jurisdictional that "does not mean, however, that it can be ignored with impunity…if the mortgagee files an untimely motion for a deficiency judgment, it would be improper for the court to render such a judgment unless the mortgagor had, either expressly or by its conduct, consented thereto….Thus, the time limitation in §49-14(a)  is more properly considered to be mandatory, which means that it must be complied with absent waiver or consent by the parties, rather than subject matter jurisdictional, which would preclude any extension of time even by express waiver or consent."); *F.D.I.C. v. Retirement Management Group, Inc.*, 31 Conn.App. 80, 84 (1993) ("strict

compliance with the procedural requirements of §49-14 is required in order to permit the trial court to render a deficiency judgment in a mortgage foreclosure action."); *Simsbury Bank & Trust Co. v. Ray Carlson Lumber Co.*, 154 Conn. 216, 220 (1966) (holding that the "requirements of s49-14 providing for deficiency judgments are explicit and unambiguous.  Since there was no compliance with its requirements as to appraisal and report, the plaintiff was not entitled to, and the court properly denied its motion for, a deficiency judgment.").

Moreover, in the event that the value of the subject property was more than the debt owed, there would be no deficiency and thus the mortgagee would not be entitled to a deficiency judgment regardless of whether the mortgagee made a claim in the foreclosure complaint for a deficiency judgment.  Although the deficiency proceeding is considered a part of a foreclosure suit, it is not initiated until after the mortgagee files a motion in accordance with the requirements of §49-14 including the implicit requirement "that the plaintiff provide the court with sufficient evidence to demonstrate that she is entitled to a deficiency judgment." *Brownstein v. Spilke*, 117 Conn.App. 761, 766 (2009).  By including a claim for deficiency judgment in the foreclosure complaint, a mortgagee merely preserves its ability to initiate deficiency proceedings in the foreclosure action at a later time should the mortgagee choose to do so.  The inherent implication of the statutory regime under §49-14 and §49-1 is that until a timely filed motion for deficiency judgment pursuant to §49-14 is made a foreclosure action is solely an action in equity to enforce a security interest.  Once a timely motion for deficiency judgment has been made pursuant to §49-14 that will have the effect of

converting the proceeding into an action at law for money damages ancillary to the initial action in equity for foreclosure to effectuate the full and complete resolution of the issues between the mortgagor and the mortgagee in the most efficient manner.

Here, although the foreclosure complaint contained a claim for a deficiency judgment, to date no timely motion seeking a deficiency judgment has been made as required under §49-14 in the foreclosure action. *See Bank of America v. Derisme*, Docket No. NNH-CV-09-6004583-S.  Since Hunt Leibert has not initiated deficiency proceedings under Connecticut's statutory regime the foreclosure action is solely an action in equity seeking the remedy of foreclosure and was never converted into an action at law seeking money damages.  Therefore Hunt Leibert has sought only to enforce its client's security interest in the foreclosure action and has not yet sought a money judgment.  At most, Hunt Leibert has preserved its client's ability to seek a deficiency judgment at a later time by including the claim in the complaint.  However, since Hunt Leibert has not initiated deficiency proceedings pursuant to §49-14 on its client's behalf, it has not attempted to collect a debt in connection with the foreclosure action but instead has only sought to enforce its client's security interest.

### b. An enforcer of a security interest falls outside the scope of the FDCPA except for the provisions of Section 1692f(6)

There is a split of authority as to whether enforcers of security interest are "debt collectors" for purposes of Section 1692f(6) only or whether enforcers of security interest should be considered "debt collectors" under the general

definition of Section 1692a(6) and thereby subject to the entire FDCPA.  *See Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, Civ.No.06-3103(RHK/AJB), 2007 WL 2695795, at \*3 (D. Minn. Sept. 12, 2007) (acknowledging split of authority and citing cases).  The Second Circuit has not yet addressed this question and so this is a matter of first impression before this Court.

Under Section 1692a, "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  §1692a(6).  In addition, Section 1692a(6) "places limits' on the term 'debt collector' by providing that '[t]he term does not include' six specific classes of debt collectors.   Law firms who initiate foreclosures of mortgages on real property are not included among the six *excluded* classes."   *Chomilo*, 2007 WL 2695795, at \*3 (quoting §1692a(6)) (emphasis in the original).  Lastly, Section 1692a(6) states that "for the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the *enforcement of security interests.*"  §1692a(6) (emphasis added).

Since Section 1692a(6) expressly includes enforcers of security interests only in reference to Section 1692f(6), courts have held that an enforcer of security interest is therefore not a debt collector for purposes of the other sections of the FDCPA.  The Eleventh Circuit recently addressed this issue and reasoned that

since "the statute specifically says that a person in the business of enforcing security interests is a 'debt collector' for the purposes of §1692f(6)" that "reasonably suggests that such a person is not a debt collector for purposes of the other sections of the Act." *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460 (11th Cir. 2009). The Eleventh Circuit explained that this conclusion was in line with the interpretive cannon of "*expressio unius est exclusion alterius*, which provides that the expression of one thing implies the exclusion of another." *Id.* (internal quotation marks and citation omitted).

The Sixth Circuit came to the same conclusion that the purposeful inclusion of enforcers of security interests for one section of the FDCPA implies that the term debt collector does not include an enforcer of security interests for any other sections of the FDCPA. *Montgomery v. Huntington Bank*, 346 F.3d 693, 700-701 (6th Cir. 2003). The Sixth Circuit's decision in *Montgomery* adopted the reasoning of *Jordan v. Kent Recovery Servs., Inc.*, 731 F.Supp. 652, 656 (D. Del. 1990). In *Jordan*, the court examined the plain meaning of the FDCPA, canons of statutory construction, and relevant legislative history in coming to its conclusion that although Congress included within the definition of "debt collectors" those who enforce security interests, it limited that definition to the provisions of Section 1692f(6). *Id.* at 657. The *Jordan* court explained that "'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'" and therefore it appeared that Congress intended an enforcer of a

security interest to fall outside the ambit of the FDCPA except for the provisions of §1692f(6).   *Id.* (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

The *Jordan* court further indicated that §1692f(6) when viewed in conjunction with the FDCPA's legislative history "provides the key to understanding the reason Congress drew a distinction between a debt collector and an enforcer of a security interest."  It explained that the "FDCPA was enacted in order to prevent the 'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have." *Id.* at 658 (citation omitted).  Whereas

> [i]n contrast to a debt collector, an enforcer of a security interest with a 'present right' to a piece of secured property attempts to retrieve something which another person possesses but which the holder of the security interest still owns.  Unlike the debtor who lacks the money sought, the possessor of secured property still has control of the property.  Any failure to return the property to the rightful owner occurs not through misfortune but through a deliberate decision by the present possessor to avoid returning the property.  Accordingly, the evil sought to be regulated by the FDCPA, *i.e.,* harassing attempts to collect money which the debtor does not have due to misfortune, is not implicated by the actions of an enforcer of a security interest with a 'present right' to the secured property.  Thus the legislative history confirms that Congress intended an enforcer of a security interest … to fall outside the ambit of the FDCPA for all purposes except for the prohibitions described in § 1692f(6).

*Id.*  The *Jordan* Court also noted that the Federal Trade Commission ("FTC"), who is empowered by Congress to enforce the FDCPA issued a "Commentary on the Fair Debt Collection Practices Act" in which the FTC expressed its view that enforcers of security interests only fall within the ambit of § 1692f(6).  *Id.*

This Court is likewise persuaded that the legislative history, plain meaning, statutory construction, and the FTC's guidance support the conclusion that an

enforcer of a security interest is only subject to § 1692f(6) and not to any other section of the FDCPA.  Other courts have reached this same conclusion for the same reasons.  *See e.g.*, *Chomilo*, 2007 WL 2695795, at *3 (concluding that an enforcer of security interest, such as a law firm foreclosing on mortgages of real property, fall "outside the ambit of the FDCPA except for the provisions of section 1692f(6)."); *Rosado v. Taylor*, 324 F.Supp.2d 917, 924 (N.D. Ind. 2004) ("Security enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices" but acknowledging that only Section 1692f(6) applies to security enforcement activities); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D. Or. 2002) (finding that foreclosing on property pursuant to a deed of trust was not the collection of a debt within the meaning of the FDCPA); *Barbatini v. Quality Loan Serv. Corp.*, No.CV-06-0065-EFS, 2007 WL 26775, at *3 (E.D.Wash. Jan. 3, 2007) ("the inclusion of an enforcer of a security interest in § 1692f(6) implies that the term 'debt collector' does not include an enforcer of a security interest for any other section of the FDCPA"); *Beadle v. Haughey*, No.Civ. 04-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005) ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA since [s]ecurity enforcement activities fall outside the scope of the FDCPA") (internal quotation marks and citation omitted); *Payne v. Reiter & Schiller, P.A.*, No.11-2067 (JRT/FLN), 2012 WL 1054873, at *2 (D.Minn. Mar. 8, 2012) (agreeing with the *Chomilo* court's conclusion that  "based on the plain language of the statute, enforcers of security interests are 'debt collectors' only for one specific provision

of the FDCPA); *cf. Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006) (holding that "a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests.").

As discussed above, an action seeking foreclosure under Connecticut law should be considered the enforcement of a security interest as opposed to an action to collect a debt.  Although there is a split of authority on this issue, it appears that a majority of courts who have addressed this question have also concluded that foreclosing on a mortgage does not qualify as debt collection activity for purposes of the FDCPA.  *See e.g., Warren*, 342 Fed. Appx. 458 at 461 (holding the foreclosing on a security interest, such as foreclosing on a home, is not debt collection activity for purposes of Section 1692g); *Beadle*, 2005 WL 300060, at *3 ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA … In short, it seems very well established that foreclosing on a mortgage does not constitute debt-collecting activity under the FDCPA"); *Overton v. Foutty & Foutty, LLP,* No. 1:07-CV-0274-DFH-TAB, 2007 WL 2413026, at *3-6 (S.D.Ind. Aug. 21, 2007) ("If a person invokes judicial remedies only to enforce the security interest in property, then the effort is not subject to the FDCPA (other than § 1692f(6) and § 1692i(a))."); *Chomilo*, 2007 WL 2695795, at *5 (holding that there is no dispute that defendant was enforcing a security interest "through Minnesota's nonjudicial foreclosure-by-advertisement statute"); *Rosado*, 324 F.Supp.2d at 924 (finding that cases holding that mortgage foreclosure is not a debt collection

activity to be "eminently sensible since '[a] mortgage is used to grant a security interest in real property'") (quoting *Black's Law Dictionary* 1357 (6th ed. 1991)); *Morris v. Equi First Corp.*, No.3:09-1086, 2011 WL 1337404, at *6 (M.D. Tenn. April 7, 2011) ("[I]t is nonetheless clear that activity undertaken to seize or foreclose on the property of a debtor pursuant to a security interest can subject a defendant to liability under the narrow provision of 15 U.S.C. § 1692f(6)"); *Stamper v. Wilson & Assocs.*, No.3:09-cv-270, 2010 WL 1408585, at *5 (E.D. Tenn. Mar. 31, 2010) ("the majority of courts hold that law firms that initiate non-judicial foreclosure proceedings are not collecting a debt, but rather, enforcing a security interest."); *cf. Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) (foreclosure activities constitute debt collection); *see also Gray v. Four Oak Court Ass'n, Inc.*, 580 F.Supp.2d 883, 887 (D. Minn. 2008) (acknowledging split of authority and citing cases).

In addition, courts have drawn a distinction between non-judicial foreclosures which are intended to only enforce the mortgagee's security interest and judicial foreclosure which also seeks a personal judgment against the debtor for a deficiency which would amount to a debt collection. *See Rousseau v. Bank of New York*, No.08-cv-00205-PAB-BNB, 2009 WL 3162153, at *8 (D. Colo. Sept. 29, 2009) (collecting cases). Based on this distinction, these courts have concluded that "in contrast to a foreclosure that is only against the property, where there is some attempt to collect money in addition to the enforcement of a security interest, an FDCPA claim will lie, at least for the conduct related to the money collection." *Id.*; *Overton v. Foutty & Foutty, LLP*, No.1:07-cv-0274-DFH-TAB, 2007

WL 2413026, at *6 (S.D.Ind. Aug. 21, 2007) ("If a person invokes judicial remedies *only* to enforce the security interest in property, then the effort is not subject to the FDCPA (other than § 1692f(6) and § 1692i(a)). But if the person is also seeking additional relief, such as a personal judgment against the borrower, then the FDCPA applies.") (emphasis in the original); *McDaniel v. South & Assocs., P.C.*, 325 F.Supp.2d 1210, 1217 (holding that the filing of a judicial foreclosure proceeding which sought personal judgment against debtor amounted to debt collection activity under the FDCPA).

This Court agrees that where there is an attempt to collect money in addition to the enforcement of a security interest, the other provisions of the FDCPA might apply to the conduct related to the collection of money.   As discussed above under Conn. Gen. Stat. §49-14, a mortgagee only seeks a personal judgment against the mortgagor upon a timely filed written motion. Consequently the other provisions of the FDCPA, such as Sections 1692g and 1692e, will only apply in a Connecticut foreclosure proceeding once a timely filed motion for a deficiency judgment pursuant to §49-14 has been made.  Here since Hunt Leibert has not filed a motion for a deficiency judgment it has not engaged in conduct related to the collection of money and consequently the provisions of Sections 1692g and 1692e are not applicable to its conduct.  The Court therefore grants summary judgment as to Plaintiff's claims that Hunt Leibert violated the

FDCPA by violating Sections 1692g and 1692e as those provisions are not applicable in the instant matter.[2]

### c. The Court questions whether the filing of a state foreclosure proceeding can serve as a basis for an FDCPA action

The Court has so far assumed in its analysis that an FDCPA action could be predicated on the filing of a state foreclosure action either under Section 1692f or under Sections 1692e and 1692g once a motion for deficiency judgment is filed.  However, the Court questions whether in view of the legislative purposes underlying the FDCPA that the filing of a state foreclosure proceeding constitutes the type of abusive debt collection practices proscribed by the FDCPA.  It is also unclear to this Court that the purposes of the FDCPA would be furthered by applying the FDCPA to state foreclosure proceedings considering the panoply of protections and safeguards available to parties of a foreclosure action under Connecticut law.

The Second Circuit recently considered a similar question regarding whether the FDCPA applied to filing a proof of claim in bankruptcy court and held

---

[2] The Court's grant of summary judgment based its conclusion that Defendant was enforcing a security interest and not collecting a debt based on the Defendant's general assertion that the FDCPA does not apply and on its own independent research, rather than the arguments made in the parties' briefs. However "[j]ust as the Court of Appeals 'may affirm the District Court's order of summary judgment on any ground that finds adequate support in the record' whether or not urged by the parties, a District Court may grant summary judgment on a ground not briefed by the parties where, as here, the record compels that result."  *Kargo, Inc. v. Pegaso PCS, S.A. de C.V.*, No.05Civ.10528(CHS)(DFE), 2008 WL 4579758, at *14 n.18 (S.D.N. Y. Oct. 14, 2008) (citation omitted). Such independent research is particularly appropriate where, as here, the complaint is recondite and verbose, obscuring the gravamen of the contentions.

that filing a proof of claim "cannot constitute the sort of abusive debt collection practice proscribed by the FDCPA, and that such a filing therefore cannot serve as the basis for an FDCPA action." *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 95 (2d Cir. 2010).  In coming to this conclusion the Second Circuit stressed that "'[c]ongress acted with the aim of eliminating abusive practices in the debt collection industry, and also sought to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. These purposes inform the FDCPA's many provisions.'" *Id.* (quoting *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 89 (2d Cir.2008)).   The Second Circuit also explained that the FDCA was "'was designed to protect against the abusive debt collection practices likely to disrupt a debtor's life.'" *Id.* (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997)).

        The Second Circuit reasoned that "'[d]ebtors in bankruptcy proceedings do not need protection from abusive collection methods that are covered under the FDCPA because the claims process is highly regulated and court controlled. While the FDCPA's purpose is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers.'" *Id.* (quoting *B-Real, LLC v. Rogers*, 405 B.R. 428, 432 (M.D. La. May 19, 2009)).  The Second Circuit noted that a debtor in bankruptcy is afforded such protections as revocation of fraudulent proofs of claim and the court's contempt power and concluded that there is "nothing in the FDCPA [that] suggests that it is intended as an overlay to

the protections already in place in the bankruptcy proceedings." *Id.* (internal quotation marks and citations omitted).

The Second Circuit's rationale with respect to bankruptcy proceedings is equally applicable to state foreclosure proceedings.  Under Connecticut law, mortgagors in a foreclosure proceeding likewise do not need protection from abusive collection methods that are covered under the FDCPA because the state foreclosure process is highly regulated and court controlled.  Consequently, the FDCPA's purpose to protect unsophisticated consumers from unscrupulous debt collectors is not implicated when a mortgagee is instead protected by the court system and its officers.

A lawyer filing a foreclosure action in Connecticut is obligated to not make a false statement of fact or law to a tribunal.  *See* Connecticut Rules of Professional Conduct Rule 3.3 (a).  In addition, a lawyer "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous:  *See* Connecticut Rules of Professional Conduct Rule 3.1.  In addition, "[i]t is generally accepted that the court has the inherent authority to assess attorneys fees when the losing party has acted in bad faith, vexaciously, dilatory, or for oppressive reasons." *Knize v. Knize*, No.FSTFA020190291S, 2007 WL 2938348, at *3 (Conn. Super. Ct. Sept. 18, 2007); *see also Maris v. McGrath*, 269 Conn. 834, 835-36 (2004) (acknowledging that Connecticut recognizes a bad faith exception to the America rule for the award of attorney fees).  Ultimately, the courts supervise and have the authority to discipline, including the power to revoke the license to practice law of any

attorney who abuses the judicial process or otherwise fails to fulfill her or his professional responsibility.  See Connecticut Practice Book, Section 2-44 ("The superior court may, for just cause, suspend or disbar attorneys and may, for just cause, punish or restrain any person engaged in the unauthorized practice of law.").  In addition disciplinary proceedings may be initiated by a debtor harmed by the conduct of an unscrupulous or less than diligent attorney.  *Id.* at Sec. 2-32 ("Any person, including disciplinary counsel, or a grievance panel on its own motion, may file a written complaint…alleging attorney misconduct."). Consequently, there are ample protections afforded by Connecticut courts which guard against a mortgagee filing a frivolous and harassing foreclosure action in the first place and from subsequently engaging in abusive motion practice.

Moreover, as the Second Circuit indicated in *Simmons* it is difficult to understand how a procedure outlined by the Bankruptcy code could possibly form the basis of a violation under the FDCPA.  *Simmons*, 622 F.3d at 95.  It is likewise difficult to understand how a procedure outlined by the Connecticut Practice Book under Connecticut law could also form the basis of a violation under the FDCPA. This is particularly true as to the 2009 FDCPA Claim that Hunt Leibert failed to issue a timely validation notice as 15 U.S.C. § 1692g(d) provides that a "communication in the form or a formal pleading in a civil action shall not be treated as an initial communication for purposed of subsection (a)" which section imposed the obligation to issue a validation notice. 15 U.S.C. §§ 1692g(a)and (d).

Here, Plaintiff asserts that Hunt Leibert violated the FDCPA by prosecuting its objection to Plaintiff's motion to dismiss.  Under Connecticut law, Hunt Leibert was required to respond to Plaintiff's motion to dismiss and could have been held in contempt by the Superior Court for failing to prosecute its claim.  This Court similarly doubts that complying with the rules of practice and procedure in Superior Court could form the basis of a violation of the FDCPA. Filing an objection to a motion to dismiss, filing a reclaim of that objection, marking the objection ready for argument, and participating in an oral argument on Plaintiff's motion to dismiss is simply not the type of abusive collective practices that the FDCPA is aimed at eliminating.

Connecticut law also broadly protects mortgagors from fraudulent and deceptive practices by recognizing various defenses to a mortgage action. "Historically, defenses to a foreclosure action have been limited to payment, discharge, release or satisfaction… or, if there had never been a valid lien." *Lasalle Nat. Bank v. Freshfield Meadows, LLC*, 69 Conn. App. 824, 833-34 (2002) (internal quotation marks and citation omitted).  In addition, Connecticut courts have "permitted several equitable defenses to a foreclosure action.  [I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had … Other equitable defenses that our Supreme Court has recognized in foreclosure actions include unconscionability … abandonment of security … and usury." *Id.* (internal quotation marks and citation omitted).  Additional defenses available to a foreclosure defendant are unclean hands, breach of implied covenant of good faith and fair dealing,

46

equitable estoppel, laches, CUTPA, and refusal to agree to a favorable sale to a third party.   *See TD Bank, N.A. v. Georgetown Land Dev. Co., LLC*, No.DBDCV095008016S, 2011 WL 3211276, at *1 (Conn. Super. Ct. June 28, 2011). "These special defenses have been recognized as valid special defenses where they were legally sufficient and addressed the making, validity or enforcement of the mortgage and/or note … The rationale behind this is that ... special defenses which are not limited to the making, validity or enforcement of the note or mortgage fail to assert any connection with the subject matter of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action." *Id.* (internal quotation marks and citation omitted).

Notably these defenses are aimed at ensuring the absence of fraud and deceit in the making, validity or enforcement of the mortgage and/or note as opposed to eliminating fraud or deceit in the foreclosure of a valid note. Unsurprisingly, Connecticut courts have not extended these special defenses to include a violation of the FDCPA.   *See e.g., Washington Mut. Bank v. Delbuono*, No.CV030081479S, 2003 WL 21958417, at *4 (Conn. Super. Ct. July 29, 2003) (A "violation of the FDCPA is not a valid defense to a foreclosure action" since "the FDCPA addresses a creditor's collection practices rather than the making, validityvor enforcement of the note or mortgage"); *G.E. Capital Mortg. v. Choinski*, No.CV9968877S, 1999 WL 391915, at *2 (Conn. Supet. Ct. June 4, 1999) ("The apparent purpose of the FDCPA is to provide … liability for those who engage in unscrupulous debt collection practices, but not to contest the validity of the underlying debt.").  However, to the extent that the FDCPA can be said to

provide a broader commitment to eliminating fraud and deceptive practices more generally, Connecticut foreclosure law provides significantly more protection to a mortgagor than the FDCPA.

In sum, it does not appear that the purpose of the FDCPA is furthered by its application to a Connecticut judicial foreclosure action.  While the FDCPA was designed to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a mortgagee is instead protected by the court system and Connecticut foreclosure law as was the case here.

       *iv.*    *Even if the FDCPA applied to Hunt Leibert's conduct the undisputed facts demonstrate that Hunt Leibert did not violate either Section 1692g or 1692e*

           **a.  Hunt Leibert did not violate the FDCPA in 2008**

Assuming arguendo that Section 1692g was applicable to Hunt Leibert's conduct and that Plaintiff's 2008 FDCPA claim was not barred by the statute of limitations, the record of evidence demonstrates that Hunt Leibert did not violate §1692g(a) in 2008 since Plaintiff, not Hunt Leibert, initiated the communication. Courts in this circuit have held that the "FDCPA's protections are not triggered by communications initiated by someone other than the debt collector."  ***Boyd v. J.E. Robert Co.***, No.05-CV-2455(KAM)(RER), 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010) (FDCPA did not apply where defendants were simply responding to inquiries made by plaintiffs concerning the outstanding amount then due and owing on plaintiff's account); ***Gorham-Dimaggio v. Countrywide Home Loans, Inc.***, No.05-cv-0583, 2005 WL 2098068, at *2 (N.D.N.Y. Aug. 30, 2005) (FDCPA did not apply where "Defendant was not 'attempting to collect a debt' and that the

communication *instituted by Plaintiff* was not 'in connection with the collection of any debt.' Rather, Defendant was merely responding to Plaintiff's inquiries as to how she could bring her mortgage current.") (emphasis in the original); *Nichols v. Washington Mut. Bank*, No.07-cv-3216, 2007 WL 4198252, at *4-5 (E.D.N.Y. Nov. 21, 2007) (holding that "FDCPA was intended to protect consumers from communications initiated by debt collectors, not consumers.").

In *Gorham-Dimaggio*, the court explained that "the purpose of § 1692 is to ensure that communications *initiated by the debt collector* (not the consumer) are not abusive, deceptive, or unfair" and therefore "when the consumer initiates the communications, many of the policy reasons behind the FDCPA disappear." 2005 WL 2098068, at *2 (collecting cases) (emphasis in the original); s*ee also Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (examining legislative purposes of FDCPA and concluded that "[t]he FDCPA was passed to protect consumers from deceptive or harassing actions *taken by debt collectors*.") (emphasis added); *Lane v. Fein, Such and Crane, LLP*, 767 F.Supp.2d 382, 387 (E.D.N.Y. Mar. 3, 2011) ("[W]hile the Court is aware of no cases that discuss whether an 'initial communication' could come from a consumer, Section 1692 provides that the purpose of the statute is 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged'. To impose the obligations of Section 1692g on any debt collector who receives an unsolicited letter from a consumer concerning a debt would, in the Court's view, impose an undue burden on debt collectors who had until then 'refrain[ed] from

using abusive debt collection practices.'") (quoting §1692).  In view of the context and purpose of Section 1692, the *Gorham-Dimaggio* court acknowledged that "[a]lthough, perhaps, subtle, there is a distinction between 'attempting to collect a debt' and responding to a consumer's voluntary inquiries how to bring a debt current." 2005 WL 2098068, at *2. To permit a consumer to unilaterally trigger a debt collector's duty to validate the debt would unduly burden and potentially frustrate a valid debt collection process.  Requiring a debt collector to suspend or stay a foreclosure action following a consumer initiated communication outside of the legal proceeding would burden the courts unnecessarily as the judicial process affords a debtor an avenue to challenge the action by asserting any defenses she or he may have and requires that the debt collector prove its claim to the relief sought.

This Court agrees that the FDCPA's purpose in preventing deceptive or harassing actions taken by a debt collector is simply not furthered by imposing 1692g's obligations on a debt collector where the consumer voluntarily initiates the communication to inquire how to bring a debt current.

Here, the record of evidence demonstrates that on January 22, 2008 Plaintiff received a letter from EMC advising her if she had any questions regarding the foreclosure process to contact the attorney/trustee handling the foreclosure process.  On January 28, 2008, Plaintiff called Hunt Leibert to find out how to stop the foreclosure.  On that same day, Plaintiff requested a payoff for the balance owed on the Note via Hunt Leibert's website.  On February 12, 2008, Plaintiff received a facsimile from Hunt Leibert with the amount needed to pay off

the mortgage loan.  The Plaintiff attempts to argue that the facsimile constitutes the initial communication by Hunt Leibert.  However in viewing all the facts, a reasonable jury could only conclude that Hunt Leibert's facsimile was a response to the Plaintiff's request for information and not an attempt to collect a debt, as was the case in *Boyd and Gorham-Dimaggio.*  To impose on Hunt Leibert the obligations prescribed by Section 1692g(a) to validate the debt in such a scenario would impose an undue burden in view of the fact that the public policy objectives the FDCPA seeks to achieve would not be advanced by doing so. In fact, it would discourage the   parties from voluntarily imparting useful information if to do so would trigger duties under the FDCPA.  Consequently, the protections of the FDCPA were not triggered by Plaintiff's January 28, 2008 call to Hunt Leibert and Hunt Leibert's February 12, 2008 response to Plaintiff's call and website request.  Even assuming that the statute of limitations did not bar this claim and that Hunt Leibert was subject to 1692g, the record demonstrates that there was no violation of 1692g.

### b.  Hunt Leibert did not violate the FDCPA in 2009

Assuming arguendo that Section 1692g was applicable to Hunt Leibert's conduct the record of evidence demonstrates that Hunt Leibert did not violate §1692g(b) in 2009 since Plaintiff first disputed the debt in her July 24, 2009 motion to dismiss the 2009 Foreclosure and where Hunt Leibert verified the debt in its objection to Plaintiff's motion to dismiss on August 12, 2009.

Plaintiff alleges that Hunt Leibert violated §1692g(b) by not forbearing on the foreclosure proceeding in 2009 prior to sending Plaintiff verification of the

debt she had disputed.  Plaintiff argues that she disputed the debt on August 27, 2009 when she sent Hunt Leibert her "Initial Debt Collection Dispute Letter." Plaintiff argues that Hunt Leibert violated §1692g(b) by not ceasing collection of the debt when it filed a reclaim of its objection to the motion to dismiss on September 25, 2008, sent Plaintiff a letter stating that it marked ready for argument the objection to the motion to dismiss, and participated in an oral argument on the motion to dismiss on October 5, 2009 prior to verifying the debt on December 15, 2009 in its Debt Validation Response Letter .

However, it appears that Plaintiff first disputed the debt on July 24, 2009 in her motion to dismiss the 2009 Foreclosure and not on August 27, 2009 as she asserts.  In her motion to dismiss, Plaintiff indicated that she had cancelled the mortgage due to her belief that EMC and First Bank Mortgage engaged in fraud and violated TILA.  She further indicated that her cancellation of the mortgage was recorded on the land records.  In her motion to dismiss, Plaintiff stated that she had sent "Notices of Rights to Cancel, Revocation of Power of Attorney and Removal of Trustee, Beneficiaries and assigns to EMC Mortgage and First Bank Mortgage.   Signatures were also rescinded from all documents…This Lis Pendens is cancelled, rejected, voided ab inito, nunc pro tunc.  I do not have any contract with you.  I do not want to get back into a contract with you.  I do not want to enter into any contracts with you… I am invoking my right to cancel CONTRACTS under commercial law within three days." [Dkt. #234, Ex. P, Superior Court Motion to Dismiss].  Plaintiff unequivocally disputes the debt in her motion to dismiss and puts forth her reasons. [Dkt.#234, Ex.T].   Indeed, Plaintiff

acknowledges in her August 27, 2009 "dispute" letter that she had rejected Hunt Leibert's "debt collection" on July 24, 2009 when she filed the motion to dismiss. Plaintiff stated in that letter that "[y]our attempt to contract with FABIOLA DERISME via Summons was rejected on July 24, 2009." [*Id*.]. A reasonable jury would conclude based on these facts that Plaintiff first disputed the debt on July 24, 2009 when she filed the motion to dismiss the 2009 Foreclosure and not when she subsequently sent a letter on August 27, 2009 which simply repeated the basis for disputing the debt that was asserted in her motion to dismiss.

Consequently, when Hunt Leibert filed its objection to the motion to dismiss on August 12, 2009 it provided the necessary verification of the debt in its objection by stating that Plaintiff Is Ra El Bey "executed a Note and Mortgage Deed, that it is the holder of the loan instruments, that the instruments are in default, and that it has elected to exercise the remedy of foreclosure in accordance with the underlying mortgage deed." [Dkt. #234, Ex. R]. "Verification of a debt requires only that the debt collector obtain a written statement that 'the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt.'" *Bascom v. Dubin*, No.03-CV-6160T, 2007 WL 210387, at *3 (W.D.N.Y. Jan. 25, 2007) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1998)); see also *Stonehard v. Rosenthal*, No.01Civ.651(SAS), 2001 WL 910771, at *6 (S.D.N.Y. Aug. 13, 2001); *Blanc v. Palisades Collection*, LLP, No.06Civ.1626(CLB), 2007 WL 3254381, at *7 (S.D.N.Y. Nov. 1, 2007). "[V]erification is only intended to 'eliminate the ... problem of debt collectors dunning the wrong person or attempting to collect

debts which the consumer has already paid.'" *Chaudhry,* 174 F.3d at 406 (quoting S.Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699).

Here, Hunt Leibert's objection to the motion to dismiss provides a verification of the amount being demanded.  Moreover, the foreclosure action itself and Hunt Leibert's objection to the motion to dismiss fulfill the purpose of the FDCPA's verification requirement in that it eliminates the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.  Indeed, the evils the verification requirement seeks to eliminate are already protected against by the panoply of safeguards afforded to civil litigants under Connecticut law.  For example, under the Connecticut Rules of Professional Conduct Rule 3.3 (a) Candor toward the Tribunal: "a lawyer shall not knowingly: (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer... [or] (3) Offer evidence that the lawyer knows to be false."  Therefore Hunt Leibert was under an obligation to ensure that it was not dunning the wrong person or attempting to collect a debt which had been paid before filing the foreclosure action in the first place and in responding to Plaintiff's motion to dismiss.  Moreover, the foreclosure is judicially supervised as is the attorney.  *See* Connecticut Practice Book Chapter 2.  Thus the foreclosure proceeding afforded the Plaintiff even more protection than the FDCPA disclosure requirements afforded her.

In sum, the Court finds that a reasonable jury would conclude that Plaintiff disputed the debt in her motion to dismiss and that Hunt Leibert verified the debt

in its objection to the motion to dismiss. Hunt Leibert took no further action to prosecute the foreclosure action between the filing of Plaintiff's motion to dismiss and its objection. Therefore Hunt Leibert appropriately "ceased collection of the debt" until verification pursuant to Section 1692g(b). The fact that Plaintiff appears to have also disputed the debt a second time in her August 27, 2009 letter is immaterial to the Court's analysis. There is no provision under the FDCPA which permits a consumer to repeatedly dispute a debt and repeatedly receive verification. To allow a consumer to do so would lead to the illogical result that a consumer could avoid paying its debt by repeatedly disputing the debt. Consequently, a reasonable jury would conclude that Hunt Leibert did not violate Section 1692g(b) in 2009.

### c. Hunt Leibert did not violate the FDCPA in 2010

Assuming arguendo that Section 1692e was applicable to Hunt Leibert's conduct the record of evidence demonstrates that Hunt Leibert did not violate §1692e(11) in 2010 since Hunt Leibert's February 12, 2010 "Reply Letter" to Derisme's three "Complaint Letters" was not a communication in connection with the collection of any debt under the FDCPA. In addition, the Plaintiff once again initiated the communication and therefore the FDCPA's protections were not triggered when Hunt Leibert merely responded to Plaintiff's unsolicited "Complaint Letters."

Under Section 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." §1692e. Section 1692e illustrates 16 examples of conduct which

constitutes a violation of this section one of which provides that the "failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action."  §1692e(11).  Plaintiff asserts that Hunt Leibert was required under Section 1692e(11) to disclose in its "Reply Letter" that the communication was from a debt collector, that it was attempting to collect a debt and that any information obtained would be used for that purpose.

"In evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice."  *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998) (citations omitted).  "The letter must be assessed in terms of the impression likely to be left upon the unsophisticated consumer.  This objective standard is designed to protect all consumers, the gullible as well as the shrewd, while at the same time protecting debt collectors from liability for bizarre or idiosyncratic interpretations of collection notices."  *Id.* (internal quotations marks and citations omitted).

Based on the plain meaning of the language of Section 1692e, the protections afforded under Section 1692e(11) are only triggered by conduct that is "in connection with the collection of any debt."  §1692e.  Consequently,

Section 1692e does not apply to a debt collector's communication that is not in connection with the collection of any debt.   Here, Hunt Leibert was merely responding to Plaintiff's "Complaint Letters" in which she informed Hunt Leibert of her belief that it was violating the FDCPA and engaging in illegal practices.   In the "Reply Letter," Hunt Leibert responded to Plaintiff's accusations, indicated that it did not believe that the FDCPA was applicable to the foreclosure proceeding, and recounted its prior correspondence with Plaintiff.   Most importantly, Hunt Leibert did not make a demand for payment of a debt or even threaten to take further action to collect a debt in its letter.   Here, even an unsophisticated consumer would understand that the "Reply Letter" was not the type of communication that fell into the category of communications "in connection with the collection of any debt."   It would undoubtedly be bizarre or idiosyncratic to interpret Hunt Leibert's "Reply Letter" as an attempt to collect a debt.

Further, courts have routinely held that communications that are merely informational and do not demand payment cannot be considered communications "in connection with the collection of any debt" under the FDCPA.   *See e.g., Bailey v. Security Nat'l Serv. Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998) ("Under the law only communications "in connection with the collection of any debt" (see 15 U.S.C. §§ 1692e, 1692g) fall under the ambit of the Act, and the defendants' letters cannot reasonably be placed in that category. The important letter dated January 4 does not 'demand' any payment whatsoever, but merely informs the Baileys about 'the current status' of their account. The

due dates listed in the letter are all prospective. Surely this is not the type of dunning letter that describes a communication related to 'the collection' of a debt."); *McCready v. Jacobsen*, No.-6-2443, 2007 WL 1224616, at *1 (7th Cir. April 25, 2007) (holding that letter that did not demand payment but simply provided at Plaintiff's request "an accounting of how his security deposit had been applied toward unpaid rent and repairs" was not a collection letter subject to the FDCPA); *Gillespie v. Chase Home Finance, LLC*, No.3:09-cv-191-TS, 2009 WL 4061428, at *5 (N.D. Ind. Nov. 20, 2009) (holding that letters were not the type of communications proscribed by Section 1692 where the letters only "advised the mortgagors that their delinquent debts had been turned over to the Defendant's Homeowner's Assistance Department, and stated that options may be available to the mortgagors to resolve their delinquencies and save their homes from foreclosure. Although ensuring payment of the debts cannot be denied as the Defendant's ultimate goal, the letters themselves did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form."); *Mabbit v. Midwestern Audit Serv., Inc.*, No.07-11550, 2008 WL 723507, at *4-5 (E.D. Mich. Mar. 17, 2008) (holding that letter that made no demand or attempt to obtain payment of a debt and instead notified consumer that "an outstanding balance ha[d] been transferred to her new account" was not a communication in connection with the collection of any debt.).   Hunt Leibert's "Reply Letter" similarly did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form and therefore a reasonable jury would not conclude that the "Reply Letter" was a communication

in connection with the collection of any debt.  Accordingly, even if Section 1692e was applicable to Hunt Leibert, there would be no violation.

In addition, as discussed above the "FDCPA's protections are not triggered by communications initiated by someone other than the debt collector." *Boyd*, 2010 WL 5772892, at *13.  It is undeniable that Plaintiff initiated the communication by sending the "Complaint Letters."  In responding to Plaintiff's "Complaint Letters" Hunt Leibert was not engaging in the type of deceptive or harassing actions taken by debt collectors that the FDCPA was designed to protect.  The policy reasons behind the FDCPA were simply not implicated by Hunt Leibert responding to Plaintiff's "Complaint Letters."  Consequently, the FDCPA would also not apply to the instant case since Plaintiff initiated the communication.  In sum, a reasonable jury would not conclude that Hunt Leibert violated Section 1692e in 2010.

### d. Individual Liability under the FDCPA

Assuming arguendo there was an FDCPA violation, the record of evidence does not demonstrate that the individual Defendants should be held liable for such violation.  "Although the Second Circuit has not yet explicitly ruled whether there may be individual liability under the FDCDPA, several district courts have concluded that individual officers and employees of a collection agency may be liable for FDCPA violations in some circumstances." *Heyward v. PRA Recovery, Inc.*, No.10cv2030(MRK), 2011 WL 3134985, at *2 (D. Conn. May 13, 2011) (collecting cases).  "For a court to find an individual to be liable under the FDCPA, however, the individual must have been personally involved in the

unlawful collection effort." *Id.*  Here no evidence has been proffered that any of the three individual defendants were personally involved in the "collection effort" and consequently they cannot be held individually liable under the FDCPA.

The Court also notes that Hunt Leibert asserts in its opposition to Plaintiff's cross-motion for summary judgment that the FDCPA's bona fide error defense applies to the present matter.  Hunt Leibert also argues that Plaintiff failed to demonstrate any specific loss under the FDCPA and a causal relationship between any actual damages and the alleged FDCPA violation. Lastly, Hunt Leibert argues that there is insufficient evidence to support an emotional distress claim under the FDCPA.  However since the Court has not found a FDCPA violation, the Court need not address these arguments.

Lastly, the Court notes that Hunt Leibert's correspondence to Plaintiff contained certain FDCPA compliant disclaimers and that Hunt Leibert sent certain notices that were compliant with Section 1692g's requirements. However, the fact that Hunt Leibert took certain precautions to comply with the FDCPA is not dispositive to the Court's analysis as to liability under the FDCPA. *See e.g., Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 399-400 (holding that the "mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment"); *Stamper*, 2010 WL 1408585, at *9 ("The question of whether defendants qualify as 'debt collectors' is a legal question which requires the court to examine the nature of the defendant's business. The fact that FDCPA disclaimers were sent in connection with a non-judicial foreclosure proceeding does not automatically

transform the defendants into 'debt collectors' … Furthermore, it is perfectly reasonable for Wilson & Associates to err on the side of caution by including FDCPA disclaimers."); *Chomilo*, 2007 WL 2695795, at *6 (rejecting argument that by including FDCPA disclaimers a defendant is estopped from asserting it is not a debt collect and holding that "it was reasonable for [defendant] to err on the side of caution and include the FDCPA disclaimers in its communications to [plaintiff].").   Here it was reasonable for Hunt Leibert to err on the side of caution and this Court will not penalize Hunt Leibert for taking such precautions.

> ### v.   *Hunt Leibert did not violate CUPTA*

Although Plaintiff contends otherwise, Plaintiff's CUTPA claim in her third amended complaint has been limited to her assertion that by violating the FDCPA Hunt Leibert also violated CUTPA.  Since the Court has found that Hunt Leibert did not violate the FDCPA, Plaintiff's CUTPA likewise fails.  However, assuming arguendo that Hunt Leibert's conduct at issue did violate the FDCPA such a technical violation would not offend public policy or implicate the type of unfair practices that CUTPA was designed to address.

CUTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110b(a). As interpreted by the Connecticut Supreme Court, there are three criteria for determining whether an act or practice is "unfair" within the meaning of CUTPA:

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-in other words, it is within at least the

penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors, or other businesspersons].... All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

*Ventres v. Goodspeed Airport, LLC,* 275 Conn. 105, 154–55, 881 A.2d 937 (2006).

"Any person *who suffers any ascertainable loss of money or property,* real or personal, as a result of the use or employment of a method, act or practice prohibited by [§ ] 42–110b, may bring an action ... to recover actual damages." *Id.* Conn. Gen.Stat. § 42–110g(a) (emphasis added).

Here, Hunt Leibert's purported failure to send a validation notice 5 days after Plaintiff's unsolicited call to Hunt Leibert and fax to Plaintiff, its purported failure to forebear in the foreclosure proceeding prior to verifying the disputed debt when it had done so previously, and its purported failure to disclose that it was attempting to collect a debt when responding to Plaintiff's "Complaint Letters" are, to the extent they can be said to constitute violations, merely technical in nature and therefore simply do not rise to the egregious level of conduct which constitutes conduct which offends public policy or other established concept of unfairness as required under CUTPA.

Connecticut courts have repeatedly acknowledged that a technical violation of a statute does not necessarily offend public policy and thereby give rise to a CUTPA violation. *See e.g., Normand Joseph Enterprises v. Connecticut Nat'l Bank*, 230 Conn. 486, 524-25 (1994) (holding that a "technical violation" of a midnight deadline which governs handling of customer bank accounts under

Conn. Gen. Stat. § 52-367a was "no more than a technical violation" of the statute which "did not offend public policy, implicate the concept of unfairness or cause the type of substantial injury that CUTPA was designed to address."); *Jacobs v. Healey Ford-Subaru, Inc.*, 231 Conn. 707, 729 (1995) (holding violations of certain provisions of the Retail Installment Sales Financing Act and the Uniform Commercial Code did not violate CUTPA where trial referee concluded that the defendant's statutory noncompliance was not unfair, deceptive or oppressive); *Leaksealers, Inc. v. Connecticut Nat. Bank*, No.CV920517952, 1995 WL 384611, at *10 (Conn. Super. Ct. June 20, 1995) (noting that "a violation of a statute does not necessarily give rise to a violation of public policy and, in turn, a violation of CUTPA" and that "a "[v]iolation of an identifiable public policy alone may be insufficient under certain circumstances to support a CUTPA violation."). Connecticut courts have instructed that "where a party claims a CUTPA violation based on an alleged violation of a public policy statute, the court's focus should be on the circumstances surrounding the violation of the statute, rather than on a technical violation of the statute itself." *Leaksealers*, 1995 WL 384611 at *10.

Here, contrary to Plaintiff's strongly-held belief, a reasonable jury would not conclude that Hunt Leibert's conduct was unfair, deceptive or oppressive.  All of Plaintiff's FDCPA allegations arise from Hunt Leibert's conduct in initiating and prosecuting a foreclosure action in state court.   As discussed above, civil litigants in state court are afforded a broad array of procedural and substantive protections against unscrupulous, unfair, and deceptive practices generally. Consequently, such a technical violation of the FDCPA in connection with a state

foreclosure action does not implicate the public policy as established by the FDCPA or other established concepts of unfairness.  As discussed above, the FDCPA's purpose to protect unsophisticated consumers from unscrupulous debt collectors is not implicated where a mortgagee is already protected by the court system and its officers.  Accordingly the public policy embodied by the FDCPA was not implicated by Hunt Leibert's conduct in the instant action and therefore a reasonable jury would not conclude that Hunt Leibert's conduct in the instant matter rose to the level of a CUTPA violation.

Hunt Leibert also argues that it is protected by the doctrine of absolute immunity to the extent that Plaintiff's CUTPA claim is premised upon pleadings in the course of judicial proceedings.  "It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy ... The privilege applies also to statements made in pleadings or other documents prepared in connection with a court proceeding." *Alexandru v. Strong,* 81 Conn.App. 68, 83 (2004) (internal quotation marks and citations omitted). However, this Court had previously limited Plaintiff's CUTPA claim to her assertion that a violation of the FDCPA is also a violation of CUTPA. Consequently,   Plaintiff's CUTPA claim before the Court is not premised on any statements Hunt Leibert made in the foreclosure action and instead on its failure to comply with the technical requirements of the FDCPA.

Lastly Hunt Leibert argues that Plaintiff's CUTPA claim fails because there is no evidence of ascertainable loss.  Since the Court has held that Hunt Leibert's

conduct did not offend public policy, it need not address Hunt Leibert's arguments as to ascertainable loss.

       *vi.*    *Plaintiff may not raise new FDCPA and CUTPA claims on summary judgment*

       Lastly, the Court notes that Plaintiff has made several entirely new FDCPA and CUTPA allegations against Hunt Leibert in her cross motion for summary judgment and in opposition to Hunt Leibert's summary judgment motion.  Plaintiff argues that Hunt Leibert also violated the FDCPA and CUTPA by fraudulently creating an assignment and creating other fraudulent documents.  Plaintiff also contends that there were several versions of the Note and that Hunt Leibert did not possess a copy of the Note when it commenced the foreclosure action.  *See* [Dkt. #279, Pl. Reply at p. 1-2].   This Court permitted Plaintiff to narrowly amend her complaint to assert only two additional FDCPA claims on July 21, 2011.  *See* [Dkt. #197].   Prior to that order, the Court narrowed Plaintiff's claim in its order on Hunt Leibert's motion for judgment on the pleadings to her claim that Hunt Leibert violated §1692g(a) in its initial telephone communication in 2008. *See Derisme*, 2010 WL 4683916, at *9.   Therefore the Court had not granted Plaintiff leave to amend her complaint to assert these new allegations.   It is further well established that a "party may not use his or her opposition to a dispositive motion as a means to amend the complaint."  *Shah v. Helen Hayes Hosp.*, 252 Fed.Appx. 364, 366 (2d Cir. 2007); *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998) (noting that a party may not raise a new claim in response to a dispositive motion); *Thomas v. Egan,* 1 Fed. Appx. 52, 54 (2d Cir.2001) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition

to a summary judgment motion.").   Consequently, the Court will not consider these new allegations as they are not properly before the Court.

Furthermore, if the Plaintiff mention, in her cross motion for summary judgment or opposition to Hunt Leibert's motion for summary judmgnet, of claims not asserted in the operative complaint is tantamount to a request for leave to amend her complaint, such leave is denied.   Although Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend the pleadings should be freely given, the "rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993).   The Second Circuit has "referred to the prejudice to the opposing party resulting from a proposed amendment as among the 'most important' reasons to deny leave to amend. *State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981) ("Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party.").   "Amendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.,* 626 F.3d 699, 725-26 (2d Cir. 2010) (internal quotation marks and citation omitted).   This litigation is over two years old and both parties have moved for summary judgment.   It would undeniably result in prejudice to allow an amendment of the complaint at this late stage in the litigation where discovery has closed and

dispositive motions have been filed and ruled upon.  *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 443, 446 (2d Cir. 1985) (upholding the denial of a motion to amend a complaint when discovery already had been completed and the non-movant had already filed a motion for summary judgment).   Accordingly, to the extent that Plaintiff once again seeks leave to amend her complaint to include the allegations that Hunt Leibert fraudulently created documents the Court denies leave to amend on the basis of prejudice.

### Conclusion

Based upon the above reasoning, the Defendant's [Dkt.# 233] motion for summary judgment is GRANTED and Plaintiff's [Dkt. #244] cross-motion for summary judgment is DENIED.  The Clerk is directed to enter judgment in favor of Defendants and close the case.


IT IS SO ORDERED.


_____/s/_____

Hon. Vanessa L. Bryant

United States District Judge


Dated at Hartford, Connecticut: July 23, 2012